IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| MAURICE CODY RIVERA, | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| WALTER MCNEIL, | ) | |
| individually and in his | ) | |
| official capacity; | ) | |
| (First Defendant) | ) | |
| | ) | |
| SEAN MORROW, | ) | |
| individually and in his | ) | |
| official capacity; | ) | |
| (Second Defendant) | ) | |
| | ) | |
| PAXTON HAMMOND | ) | |
| individually and in his | ) | |
| official capacity; | ) | |
| (Third Defendant) | ) | |
| | ) | |
| RICHARD ROUNDTREE, Sheriff | ) | |
| for Richmond County, individually | ) | |
| and in his official capacity | ) | |
| (Fourth Defendant) | ) | |
| | ) | |
| RICHMOND COUNTY SHERIFF'S | ) | |
| OFFICE | ) | |
| (Fifth Defendant) | ) | |
| | ) | |
| AUGUSTA-RICHMOND COUNTY | ) | |
| GOVERNMENT | ) | |
| (Sixth Defendant) | ) | |
| | ) | |

1

## COMPLAINT

COMES NOW PLAINTIFF, MAURICE CODY RIVERA (hereinafter "PLAINTIFF") and files this Complaint for damages as follows:

## PARTIES, JURISDICTION AND VENUE

(1)

PLAINTIFF is a citizen of the United States of America and currently resides in Augusta, Georgia.

(2)

DEFENDANT WALTER MCNEIL is now, and at all times material to this action was, duly appointed, employed and acting as an Investigator in the Criminal Investigation Division of the DEFENDANT RICHMOND COUNTY SHERIFF'S OFFICE for DEFENDANT AUGUSTA-RICHMOND COUNTY GOVERNMENT, a municipal corporation and governmental subdivision of the State of Georgia. MCNEIL is sued in his individual and official capacities. And MCNEIL was acting within the course and scope of his employment at all times material to this Complaint.

(3)

DEFENDANT SEAN MORROW is now, and at all times material to this

action was, duly appointed, employed and acting as an Investigator in the Criminal

Investigation Division of the DEFENDANT RICHMOND COUNTY SHERIFF'S

OFFICE for DEFENDANT AUGUSTA-RICHMOND COUNTY

GOVERNMENT, a municipal corporation and governmental subdivision of the

State of Georgia. MORROW is sued in his individual and official capacities. And

MORROW was acting within the course and scope of his employment at all times

material to this Complaint.

(4)

DEFENDANT PAXTON HAMMOND is now, and at all times material to

this action was, duly appointed, employed and acting as an Investigator in the

Criminal Investigation Division of the DEFENDANT RICHMOND COUNTY

SHERIFF'S OFFICE for DEFENDANT, a municipal corporation and

governmental subdivision of the State of Georgia. HAMMOND is sued in his

individual and official capacities. And HAMMOND was acting within the course

and scope of his employment at all times material to this Complaint.

(5)

DEFENDANT RICHARD ROUNDTREE is the Sheriff for the

DEFENDANT RICHMOND COUNTY SHERIFF'S OFFICE and is the final

policy-maker for the Sheriff's Office regarding systemic and individual officer

training and supervision of employees and other internal operations of the

DEFENDANT RICHMOND COUNTY SHERIFF'S OFFICE.

(6)

The DEFENDANT RICHMOND COUNTY SHERIFF'S OFFICE

(hereinafter "RCSO") is a law enforcement agency in Augusta-Richmond County

responsible for investigating and enforcing the law within Augusta-Richmond

County. And DEFENDANT AUGUSTA-RICHMOND COUNTY

GOVERNMENT is a municipal corporation and body politic organized under the

law of the State of Georgia and is authorized to sue and be sued in its corporate

name.

(7)

All of the DEFENDANTS, at all times material to this action, were acting

under color of state law.

(8)

This action arises under the Fourth and Fourteenth Amendments to the

Constitution of the United States and under the Civil Rights Act, Title 42 of the

United States Code, Section 1983 (42 U.S.C. § 1983).

(9)

This Court has original jurisdiction of the federal claims under and by virtue

of 28 U.S.C. §1331 and §1343 and supplement jurisdiction over PLAINTIFF's

state law causes of action pursuant to 28 U.S.C. §1367. The PLAINTIFF timely

and fully complied with Georgia's Ante Litem notice in a letter sent on February

21, 2024, a copy of which is filed herewith along with verifications of receipt.

(10)

A substantial part of the events giving rise to the claims asserted in this

Complaint occurred in the Southern District of Georgia.  Venue is proper under

Title 28 of the United States Code, Section 1391(b), (28 U.S.C. § 1391 (b)).

## ALLEGATIONS OF FACT

(11)

On or about July 16, 2020, an individual named Tyler MIDDLETON

reported to officers with RCSO that he had been randomly approached while on

foot by an unknown white female driving a 2012 Nissan Maxima and two men in

masks, one pointing an AR-15 rifle, who robbed him.

(12)

MIDDLETON described the act to law enforcement as random "bad luck"

and said he had no idea why he was robbed.

(13)

As part of their investigation, officers with RCSO were able to obtain video

footage of the location and time that MIDDLETON claimed he was robbed.

(14)

A review of the video footage showed that MIDDLETON was not robbed at the location and time that MIDDLETON claimed he was robbed.

(15)

Based upon MIDDLETON having knowingly provided an untrue statement to create a false or misleading impression, RCSO officers, including the named DEFENDANTS who encountered him, knew that MIDDLETON was a liar under any common definition of that term.

(16)

When confronted with being a liar, MIDDLETON changed his story.

(17)

In MIDDLETON's second version of events, he told DEFENDANTS and law enforcement that he met a woman on "Plenty of Fish", a sexual dating website, who would then later pick him up and who had two black men in the back of her car, one armed with an AR-15 style rifle.

(18)

MIDDLETON told RCSO the two black males were in the backseat with medical masks on.

(19)

MIDDLETON claims they went down a back street where he says he was

held at gunpoint, robbed, and forced out of the car.

(20)

This time a security video did show MIDDLETON exiting a 2019 Hyundai

Elantra with South Carolina license plates registered to Adrianne HILTON.

(21)

DEFENDANT Walter MCNEIL was assigned to investigate the case as lead

investigator.

(22)

MCNEIL showed HILTON's photo to MIDDLETON who claimed that she

was the driver who he had met up with.

(23)

MIDDLETON identified HILTON as the white female driving the vehicle

that picked him on.

(24)

Facebook is an online social media and social networking service that

routinely works with law enforcement and can provide an user's IP address and

unique identifier information including, but not limited to photos, social

associations, date of birth, nicknames, and current and historical location

information.

(25)

HILTON's Facebook profile information was obtained and reviewed by

RCSO.

(26)

DEFENDANT HAMMOND identified dated Facebook posts from Adrianne

HILTON in which she references an individual named 'Maurice Rivera'.

(27)

DEFENDANT MORROW located a Facebook profile for a "Pedro Kilo"

the page owner of which he determined matched the picture of the black male who

Tyler MIDDLETON had identified as the black male with the rifle.

(28)

U.S. Marshall Special Agent Timothy Keen provided DEFENDANT

MCNEIL a dated incident report from South Carolina in which HILTON was

present with PLAINTIFF during an encounter with law enforcement.

(29)

DEFENDANT MCNEIL, identified, determined and concluded 'Maurice

Rivera is 'Kilo Pedro.'(sic)" in his "Investigative Report".

(30)

DEFENDANT MCNEIL swore out the arrest warrant for PLAINTIFF on

July 21, 2020.

(31)

More specifically, MCNEIL's sworn warrant application states in material

part:

> Inv. McNeil then showed Tyler Middleton a picture of a black male
> who was also on Adrianne Hilton's Facebook and Tyler [Middleton]
> stated that was the male who had the gun in the back seat.
>
> Inv. McNeil arrived back at CID and briefed Investigator Sean
> Morrow on the details on the case.  Inv. Morrow was able to find a
> Facebook profile of a "Pedro Kilo" who matched the picture of the
> black male who Tyler Middleton identified as the black male with the
> gun.  Inv. McNeil filled out a Facebook Preservation Form on "Pedro
> Kilo" as well.
>
> Through further investigation and help thru (sic) RCSO intel and U.S.
> Marshall Deputy Timothy Keen, Inv. McNeil was able to find out the
> name of the black male suspect who was in the back seat of the
> vehicle with the AR.  The suspects (sic) name is Maurice C. Rivera.

(32)

The person identified by MIDDLETON and who is depicted in the Facebook

profile for "Pedro Kilo" is Keenon Trayvon STALEY and not PLAINTIFF.

(33)

9

This wrongful and conclusory identification by MCNEIL of PLAINTIFF was the sole basis for arresting PLAINTIFF RIVERA on August 3, 2020.

(34)

This identification and affirmative statement by MCNEIL was false and this false statement was made knowingly and intentionally made or made with reckless disregard for the truth.

(35)

MCNEIL's identification of PLAINTIFF as the individual 'Pedro Kilo' was a deliberate falsehood or made with reckless disregard for the truth in violation of Franks v. Delaware, 98 S.Ct. 2674 (1978).

(36)

MCNEIL acted with reckless disregard for the truth, and the arrest warrant false statement was necessary to the finding of probable cause.

(37)

After the PLAINTIFF was arrested, MCNEIL did not interview the PLAINTIFF as he sat in the Richmond County Jail.

(38)

MCNEIL obtained a copy of the "Pedro Kilo"'s profile from Facebook on or about October 15, 2020, after the PLAINTIFF had been in custody for over two

months.

(39)

In the Facebook profile for "Pedro Kilo" STALEY listed his "registered email address" as keenostaley2000@gmail.com.

(40)

The "Pedro Kilo" Facebook profile obtained by MCNEIL was being accessed from various locations throughout South Carolina and other locations during the period PLAINTIFF was incarcerated.

(41)

STALEY'S birthdate is the same as the "Pedro Kilo" Facebook profile page user's date of birth listed as September 29, 2000.

(42)

While PLAINTIFF was incarcerated, STALEY used his "Pedro Kilo" Facebook profile to search for "Maurice Rivera" and "Adrianne Hilton" on August 11, 2020, as reflected in the copy "Pedro Kilo"'s profile MCNEIL obtained from Facebook.

(43)

STALEY used his "Pedro Kilo" account to access Facebook from South Carolina and was looking for information about "the Richmond Police

Department" and news articles that included "news 12 adrian hilton" during the time PLAINTIFF was incarcerated.

(44)

STALEY via messenger on the "Pedro Kilo" Facebook page provided an email where he could be reached as "keenondadawg@gmail.com" in the records.

(45)

A contact of STALEY on the "Pedro Kilo" profile calls the user by the name "Keenon" in a Facebook messenger message.

(46)

STALEY, as the "Pedro Kilo" Facebook profile page user, discusses the incident for which PLAINTIFF was wrongfully arrested with another person over Facebook messenger and states in reference to PLAINTIFF "they got the wrong person" and that "[Hilton's boyfriend] look (sic) like me or sum (sic)."

(47)

STALEY had a criminal history and was known to law enforcement in South Carolina before this incident having previously been arrested on or about March 27, 2019, for discharging a firearm into a dwelling in North Charleston, South Carolina.

(48)

"Pedro Kilo" Facebook page owner STALEY was "friends" with HILTON on Facebook.

(49)

No exigency existed at the time the arrest warrant was taken out which would have prevented MCNEIL, MORROW, or HAMMOND from doing a proper investigation.

(50)

MIDDLETON did not know the identity of the suspects who allegedly robbed him.

(51)

No showup, photo array photographic identification nor lineup was utilized to determine if MIDDLETON could identify STALEY, PLAINTIFF or any other individual in this case.

(52)

Instead, MIDDLETON was shown a single photograph of STALEY and asked to confirm in essence: this-is-the-guy-who-did-it--right?

(53)

Neither DEFENDANT MCNEIL, MORROW, nor HAMMOND nor anyone

with RCSO substantively reviewed the "Pedro Kilo" Facebook profile obtained by

law enforcement to make a correct determination that STALEY was not

PLAINTIFF.

(54)

Nothing in the "Richmond County Sheriff's Office Criminal Investigation

Division Standard Operating Procedures" nor the "Richmond County Sheriff's

Office Policy and Procedures Manual", in effect at all pertinent times in this case,

required RCSO employees to review, analyze, and understand information

obtained through their investigative process.

(55)

In his capacity as Sheriff, ROUNDTREE was responsible for the training,

oversight, and policies and procedures implemented at all times material to this

lawsuit.

(56)

ROUNDTREE failed to establish policies, procedures, and training that

would ensure that PLAINTIFF would not be arrested which resulted in the

deprivation of PLAINTIFF's liberty interests.

(57)

Specifically, had DEFENDANT MCNEIL, MORROW, or HAMMOND or

anyone with RCSO reviewed the "Pedro Kilo" Facebook information they would have correctly concluded that the Facebook profile of a "Pedro Kilo", who matched the picture of the black male who MIDDLETON identified as the black male involved in the alleged robbery, was STALEY and not PLAINTIFF.

(58)

DEFENDANTS MCNEIL, MORROW, and HAMMOND wilfully, intentionally, deliberately or with reckless disregard for the truth falsified and omitted facts which were clearly critical to a finding of probable cause from the PLAITNIFF's warrant, including, but not limited to the prior lies MIDDLETON provided to them and RCSO about the facts and circumstances of his alleged robbery.

(59)

DEFENDANTS MCNEIL, MORROW, and HAMMOND failed to attempt to identify the known perpetrator through social media or other readily accessible alternative sources of information including showup, photo array photographic identification or lineup. And failed to review the Facebook profile of "Pedtro Kilo" after being obtained.

(60)

The Richmond County Magistrate issuing the arrest warrant for PLAINTIFF

relied on MCNEIL's fabricated and false representation that PLAINTIFF had been

positively identified by MIDDLETON, MCNEIL, MORROW, and HAMMOND in

erroneously finding probable cause to issue an arrest warrant on or about August 3,

2020.

(61)

MCNEIL presented the case against PLAINTIFF to the Richmond County

Grand Jury on or about January 27, 2021.

(62)

No physical evidence was recovered from the scene of the robbery by any of

the DEFENDANTS or anyone acting on behalf of the DEFENDANTS.

(63)

MCNEIL had access to exculpatory evidence in his file with the "Pedro

Kilo" STALEY Facebook profile on the day he presented the PLAINTIFF's case to

the Richmond County Grand Jury.

(64)

PLAINTIFF was never interviewed by MCNEIL, MORROW,  HAMMOND

or anyone from RCSO.

(65)

In a custodial statement to MCNEIL, HILTON told MCNEIL that

PLAINTIFF was not in the vehicle at the time she encountered MIDDLETON.

(66)

MCNEIL was presented with a Facebook account known to be associated with the actual perpetrator of the robbery and refused to review the information contained therein and readily available regarding the actual identified person who committed the robbery.  In so doing, MCNEIL created a very substantial likelihood of irreparable misidentification.

(67)

MCNEIL, MORROW,  and HAMMOND are familiar with Facebook, and its general operation and function.

(68)

At the time of the Robbery, PLAINTIFF was in North Augusta, South Carolina at his grandmother's home where he was residing.

(69)

PLAINTIFF was indicted on or about January 27, 2021, for Armed Robbery and Possession of a Firearm during the commission.

(70)

PLAINTIFF RIVERA remained in custody for nine (9) months before being released on bond before being rearrested for allegedly violating the terms of bond

and was again released after Judge John Flythe determined the state did not establish any violation had occurred.

(71)

While on bond, PLAINTIFF was subject to being on an ankle monitor, subject to fees associated with the ankle monitor and prohibited from seeing his daughter.

(72)

While in custody, PLAINTIFF was stabbed by another inmate, removed from a shower naked by guards, and repeatedly, systemically and brutally subjected to harassment and intimidation by other inmates and guards.

(73)

The Augusta Judicial Circuit District Attorney's Office *nolle prossed* the indicted criminal case against PLAINTIFF on September 12, 2023.

(74)

PLAINTIFF is not "Pedro Kilo" in the Facebook Profile, was not identified my MIDDLETON and was not involved with the alleged robbery.

### **COUNT ONE – Fourth Amendment False Arrest Claim**

(75)

The Fourth Amendment to the United States Constitution states as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

18

seizures, shall not be violated, and **no Warrants shall issue, but upon probable cause**, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

(76)

The warrant under which the PLAINTIFF was arrested was not supported by probable cause.

(77)

The acts and conduct of DEFENDANTS MCNEIL, MORROW, HAMMOND and ROUNDTREE deprived PLAINTIFF RIVERA of his rights, guarantees, and privileges under the Fourth Amendment to the United States Constitution in that MCNEIL, MORROW, HAMMOND and ROUNDTREE's conduct as outlined above created false, misleading, and willfully omitted information in the arrest warrant application, thereby violating PLAINTIFF RIVERA's constitutional Fourth Amendment right to not be unreasonably seized and deprived of liberty as a result of the fabrication and willful omission of evidence by government actor.

(78)

PLAINTIFF was falsely arrested under a warrant that was falsely sworn by MCNEIL, who willfully and/or with reckless disregard for the truth made false

19

statements and misleading statements to the magistrate to manufacture probable

cause for the arrest warrant, which would not have been issued but for said false

and misleading statements.

(79)

In July 2020, it was clearly established law under the Fourth Amendment

that:

(a) An officer cannot make false or misleading statements to obtain a

warrant.  Franks v. Delaware, 438 U.S. 154 (1978).

(b) An officer may not rely upon false statements by others in support of a

warrant application where a reasonable officer would have known that

the facts stated in the affidavit do not constitute probable cause.  Malley

v. Briggs, 475 U.S. 335 (1986).

(c) An officer cannot falsify facts to establish probable cause.  Kingsland v.

City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004).

(d) A warrant is not valid if the affidavit supporting the warrant contains

deliberate falsity or reckless disregard for the truth.  Franks, supra; Dahl

v. Holley, 312 F.3d 1228, 1235 (11th Cir. 2002).

(e)  A warrant is not valid if the affidavit supporting it omits material facts
that would make the affidavit untrue if those facts were included.  <u>United
States v. Martin</u>, 615 F.2d 318, 328–29 (5th Cir. 1980).

(f) Officers cannot unreasonably and knowingly disregard or ignore
evidence or refuse to take an obvious investigative step that would
readily establish that they lack probable cause to arrest a suspect. <u>Cozzi v.
City of Birmingham</u>, 892 F.3d 1288 (11th Circuit 2018)


(80)

The foregoing principles of clearly established law, which apply to both
arrest warrants and search warrants under the Fourth Amendment, are rules of
which any reasonable officer would have been aware at the time of the events
giving rise to this lawsuit.

(81)

Because any reasonable officer would have known that the acts and
omissions of DEFENDANTS MCNEIL, MORROW, HAMMOND and
ROUNDTREE alleged herein were in violation of clearly established law,
MCNEIL, MORROW, HAMMOND and ROUNDTREE are not entitled to

qualified immunity for falsely arresting PLAINTIFF RIVERA under the Fourth

Amendment.

### COUNT TWO – Fourth Amendment Malicious Prosecution Claim

(82)

By swearing out an arrest warrant and filing formal criminal charges against

PLAINTIFF, DEFENDANT MCNEIL caused a criminal prosecution to be initiated

against PLAINTIFF RIVERA.

(83)

In addition to initiating the prosecution, MCNEIL, MORROW, and

HAMMOND continued to participate and assist in the continuation of the

prosecution against PLAINTIFF over the next several months in which he was

incarcerated which were foreseeable consequences of the unconstitutional acts and

omissions of DEFENDANTS.

(84)

The facts and circumstances show that (i) DEFENDANTS MCNEIL,

MORROW, and HAMMOND fabricated evidence by deliberately falsifying or

acting with total reckless disregard for the truth, that the robber was PLAINTIFF;

(ii) MCNEIL fabricated evidence by preparing a probable cause affidavit, seeking

a warrant for the arrest of PLAINTIFF, where he falsely stated that PLAINTIFF

RIVERA was the same individual in the "Pedro Kilo"/STALEY Facebook profile;

(iii) MCNEIL fabricated and provided misleading evidence by presenting to

prosecutors and the magistrate court that PLAINTIFF was the same person in the

"Pedro Kilo"/STALEY Facebook profile; and (iv) DEFENDANTS MCNEIL,

MORROW, and HAMMOND deliberately ignored and failed to follow-up on

known exculpatory evidence, inconsistencies, and other leads that would have

exonerated PLAINTIFF RIVERA  and would have prevented him from being

falsely arrested and prosecuted.

(85)

DEFENDANTS MCNEIL, MORROW, and HAMMOND acted with malice,

with reckless disregard for the truth, and without regard for the rights of

PLAINTIFF when they caused, participated and assisted with the prosecution of

PLAINTIFF and the continuation of that prosecution over the next several months

when they knew or should have known that there was no actual or arguable

probable cause to support the criminal charges that MCNEIL caused to be filed

against PLAINTIFF.

(86)

Said prosecution of PLAINTIFF with malice and without probable cause

was ultimately terminated in favor of PLAINTIFF when the charges against him

were *nolle prossed* by motion of the Augusta Judicial Circuit District Attorney on or about September 11, 2023.

(87)

Just as it was a violation of clearly established law for DEFENDANTS MCNEIL, MORROW, and HAMMOND to make false statements to obtain a warrant for PLAINTIFF RIVERA, it was also a violation of clearly established law for MCNEIL, MORROW, and HAMMOND to willfully overlook information that would exonerate PLAINTIFF that was in their possession and use the same false and misleading statements or omissions of fact to cause, participate in, and assist with the initiation and continuation of the prosecution of PLAINTIFF when they knew or should have known that such statements and omissions were false or misleading and that a reasonable officer would have known that there was no arguable probable cause to prosecute PLAINTIFF.

(88)

Because any reasonable police officer in the year 2020 would have known that it was unconstitutional to falsify evidence, manufacture probable cause, and disregard and ignore evidence either to support an arrest or a criminal prosecution, MCNEIL, MORROW, and HAMMOND are not entitled to qualified immunity for the malicious prosecution of PLAINTIFF under the Fourth Amendment.

## COUNT THREE – Supervisory Liability Claim

(89)

As DEFENDANTS MCNEIL, MORROW, and HAMMOND's supervisor, ROUNDTREE participated in the false arrest and malicious prosecution of PLAINTIFF as there was a causal connection between actions and failure to act of ROUNDTREE in his supervising official capacity and the alleged constitutional deprivation of PLAINTIFF.

(90)

RCSO under the direction of ROUNDTREE has a well-established and documented history of widespread abuse, improper policy and procedure implementation, and lack of oversight, sufficient to put ROUNDTREE in his role as responsible supervisor on notice of the need to correct the deprivations of PLAINTIFF and others rights, and he failed to do so.

(91)

These deprivations constitute obvious, flagrant, rampant and of continued duration, rather than isolated occurrences and are widespread abuse sufficient to notify ROUNDTREE in his supervising official capacity.

(92)

ROUNDTREE had a custom or policy of failing to discipline officers,

failing to document officers' personnel files of disciplinary action, failing to

address policy and procedure shortcomings, and failing to oversee the department

resulting in deliberate indifference to the Constitutional rights of the PLAINTIFF

and others.

(93)

ROUNDTREE otherwise assisted, supervised, or approved the acts and

omissions of his subordinates, DEFENDANTS MCNEIL, MORROW, and

HAMMOND, in ways that cannot be pled with greater particularity until

completion of discovery.

(94)

Additionally or alternatively, upon information and belief, Sheriff

ROUNDTREE acted or failed to act with deliberate indifference to the

constitutional rights of PLAINTIFF in particular, or to the rights of citizens in

general by encouraging and condoning the practices engaged in by

DEFENDANTS MCNEIL, MORROW, and HAMMOND, in ways that cannot be

pled with greater particularity until completion of discovery.

(95)

Said deliberate indifference on the part of ROUNDTREE was a proximate

cause of the violation of PLAINTIFF's rights under the Fourth Amendment, for

which said DEFENDANT has supervisory liability under 42 U.S.C. §1983.

(96)

DEFENDANT ROUNDTREE is not entitled to qualified immunity because any reasonable supervisor of police officers in the year 2020 would have known that it was unlawful to falsify or embellish facts in order to manufacture probable cause for a warrant, that it was unlawful to condone such behavior by subordinates, that it is unlawful to disregard or ignore evidence and that no reasonable officer or supervisor would have believed that the evidence being relied upon to charge PLAINTIFF rose to the level of probable cause, and thus he can be held individually liable for MCNEIL, MORROW, and HAMMOND's actions to the extent that he participated in or, by deliberate indifference, caused PLAINTIFF be falsely arrested or maliciously prosecuted in violation of the Fourth Amendment.

## COUNT FOUR – Municipal Liability Claim

(97)

To the extent that ROUNDTREE participated in the false arrest and/or malicious prosecution of PLAINTIFF as final decisionmaker with respect to law enforcement for AUGUSTA-RICHMOND COUNTY GOVERNMENT and the RICHMOND COUNTY SHERIFF'S OFFICE or to the extent that ROUNDTREE was deliberately indifferent to constitutional rights as either a final decisionmaker

or policymaker whose deliberate indifference caused the deprivation of PLAINTIFF's Fourth Amendment rights, said action or inaction on the part of ROUNDTREE is imputed to the AUGUSTA-RICHMOND COUNTY GOVERNMENT and the RICHMOND COUNTY SHERIFF'S OFFICE for purposes of municipal liability under 42 U.S.C. §1983.

(98)

In addition to being liable for the acts and omissions of ROUNDTREE as final decisionmaker and policymaker, the AUGUSTA-RICHMOND COUNTY GOVERNMENT and the RICHMOND COUNTY SHERIFF'S OFFICE is also subject to municipal liability under Section 1983 to the extent that a defective custom, policy or practice of the AUGUSTA-RICHMOND COUNTY GOVERNMENT and the RICHMOND COUNTY SHERIFF'S OFFICE was the moving force behind the deprivation of PLAINTIFF's Fourth Amendment rights.

(99)

PLAINTIFF is unable to plead this count with greater particularity until after the completion of discovery, at which time PLAINTIFF reserves the right to amend accordingly.

## COUNT FIVE–Wrongful/Malicious Arrest Claim

(100)

Under Georgia law, malice is an element of malicious prosecution and wrongful/malicious arrest and may be inferred by a total lack of probable cause.

(101)

Pursuant to O.C.G.A. § 51-7-1, "An arrest under process of law, without probable cause, when made maliciously, shall give a right of action to the party arrested."

(102)

DEFENDANT MCNEIL acting within the course and scope of his employment with AUGUSTA-RICHMOND COUNTY GOVERNMENT and the RICHMOND COUNTY SHERIFF'S OFFICE, arrested PLAINTIFF with a total lack of probable cause and as such PLAINTIFF has a right of action pursuant to O.C.G.A. § 51-7-1 for wrongful/malicious arrest.

## COUNT SIX– Malicious Prosecution

(103)

MCNEIL acting within the course and scope of his employment with AUGUSTA-RICHMOND COUNTY GOVERNMENT and the  RICHMOND COUNTY SHERIFF'S OFFICE (1) initiated prosecution against the PLAINTIFF;

(2) did so without probable cause; (3) did so with malice; (4) did so under a valid

arrest warrant issued based on false information provided by MCNEIL, (5) the

criminal proceeding terminated in favor of the PLAINTIFF; and (6) caused the

PLAINTIFF damages.

## COUNT SEVEN- False Arrest and Imprisonment

### (104)

DEFENDANT MCNEIL, acting within the course and scope of his

employment with AUGUSTA-RICHMOND COUNTY GOVERNMENT and the

RICHMOND COUNTY SHERIFF'S OFFICE  unlawfully and illegally detained

the PLAINTIFF and as such are liable under Georgia law for his injury and

resulting damages.

## COUNT EIGHT- Assault and Battery

### (105)

DEFENDANT MCNEIL, acting within the course and scope of his

employment with AUGUSTA-RICHMOND COUNTY GOVERNMENT and the

RICHMOND COUNTY SHERIFF'S OFFICE caused apprehension of physical

contact and unlawful touching of the PLAINTIFF which resulted in physical injury

to the PLAINTIFF.

## **DAMAGES**

(106)

As a direct and proximate result of the aforementioned unconstitutional conduct of DEFENDANTS, PLAINTIFF was deprived of his liberty, confined for an extended period of time, forced to incur lost wages and other economic losses, and forced to endure severe stress and mental suffering for which he is entitled to recover compensatory damages from all of the DEFENDANTS in an amount to be determined by a jury.

(107)

Because the unconstitutional acts of DEFENDANTS were committed willfully, in bad faith, or with reckless disregard for the rights of PLAINTIFF, and because DEFENDANTS had knowledge of, participated in, or were complicit with such conduct by MCNEIL, MORROW, and HAMMOND, PLAINTIFF also seeks to recover punitive damages from DEFENDANTS in an amount to be determined by a jury.

(108)

PLAINTIFF is also entitled to recover reasonable attorney's fees under 42 U.S.C. §1988.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF demands:

(a) That DEFENDANTS answer this Complaint within the time required by law;

(b) The PLAINTIFF be awarded such damages as will fully compensate the PLAINTIFF for the DEFENDANTS' violations of Federal law, the laws of the State of Georgia and the United States Constitution;

(c) That PLAINTIFF be awarded attorneys' fees as authorized under 42 U.S.C.S. § 1988 for DEFENDANTS' violation of 42 U.S.C.S. § 1983 *et. seq.* and as otherwise authorized under federal and state law

(d) The aforementioned conduct of DEFENDANTS amounted to such conscious

indifference and reckless disregard for the consequences as to also authorize the imposition of punitive damages against the DEFENDANTS under both federal and state law.

(e) That PLAINTIFF be awarded such other, additional or general relief as the interests of justice may require; and

(f) For a jury to hear and render judgment on those causes of action so triable.

A JURY TRIAL IS DEMANDED.

This 21st day of October 2024

        **_/S/ Robert T. Homlar___**
        Robert T. Homlar
        GA Bar Number: 364714
        Attorney for PLAINTIFF RIVERA

Robert T. Homlar P.C.
580 James Brown Blvd.
Augusta, GA 30901
(706) 831-0859/ Telecopier (706) 432-1722
robert@homlarlaw.com