IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

MAURICE CODY RIVERA,   )
Plaintiff,       ) Civil Action No.
          ) 1:24-cv-188
v.         )
          ) JURY TRIAL DEMANDED
WALTER MCNEIL,    )
(First Defendant)    )
          )
SEAN MORROW,     )
(Second Defendant)   )
          )
PAXTON HAMMOND,   )
(Third Defendant)    )
          )

## **AMENDED COMPLAINT**

COMES NOW PLAINTIFF, MAURICE CODY RIVERA (hereinafter

"PLAINTIFF") and files this Amended Complaint for damages as follows:

## **PARTIES, JURISDICTION AND VENUE**

(1)

PLAINTIFF is a natural person and citizen of the United States of America,

currently residing in Richmond County, Georgia and over the age of eighteen (18).

(2)

DEFENDANT WALTER MCNEIL is an individual who was, at all times

relevant and material to the allegations in this Amended Complaint, an employee of the Richmond County Sheriff's Office, (hereinafter "RCSO"), acting under color of law.

(3)

DEFENDANT SEAN MORROW is an individual who was, at all times relevant and material to the allegations in this Amended Complaint, an employee of RCSO acting under color of law.

(4)

DEFENDANT PAXTON HAMMOND is an individual who was, at all times relevant and material to the allegations in this Amended Complaint, an employee of RCSO acting under color of law.

(5)

All Defendants are sued in their individual capacity only but Plaintiff reserves the right to add official capacity claims should discovery reveal the existence of such claims.

(6)

This action arises under the Fourth and Fourteenth Amendments to the Constitution of the United States and under the Civil Rights Act, Title 42 of the United States Code, Section 1983 (42 U.S.C. § 1983) and Title 42 of the United

States Code, Section 1988 (42 U.S.C. § 1988).

(7)

This Court has original jurisdiction of the Federal claims under 28 U.S.C. §1331 and §1343 and supplement jurisdiction over PLAINTIFF's state law causes of action under 28 U.S.C. §1367. The PLAINTIFF timely and fully complied with Georgia's Ante Litem notice in a letter sent on February 21, 2024, a copy of which is filed with the original Complaint in this case.

(8)

A substantial part of the events giving rise to the claims asserted in this Amended Complaint occurred in the Southern District of Georgia.  Venue is proper under Title 28 of the United States Code, Section 1391(b), (28 U.S.C. § 1391 (b)) and Local Rule 2.1(a) of the Local Rules for the Southern District of Georgia in that Richmond County, Georgia is within the Augusta Division of the Southern District of Georgia.

**FACTS**

(9)

On or about July 16, 2020, an individual named Tyler MIDDLETON reported to officers with RCSO that he had been randomly approached while on foot by an unknown white female driving a 2012 Nissan Maxima and two men in

masks, one pointing an AR-15 rifle, who robbed him.

(10)

MIDDLETON described the act to law enforcement as random "bad luck" and said he had no idea why he was robbed.

(11)

As part of their investigation, officers with RCSO were able to obtain video footage of the location at the time that MIDDLETON claimed he was robbed.

(12)

A review of the video footage showed that MIDDLETON was not robbed at the location and time that MIDDLETON claimed to have been robbed.

(13)

Based upon MIDDLETON having knowingly provided an untrue statement to create a false or misleading impression, RCSO officers, including the named DEFENDANTS who encountered him, knew that MIDDLETON was a liar under any common definition of that term.

(14)

When confronted with being a liar, MIDDLETON changed his story.

(15)

In MIDDLETON's second version of events, he told DEFENDANTS and

RCSO law enforcement that he met a woman on "Plenty of Fish," a "dating" website, who then picked him up and who had two black men with medical masks on in the back of her car, one armed with an AR-15 style rifle.

(16)

MIDDLETON claims they went down a back street where he says he was held at gunpoint, robbed, and forced out of the car.

(17)

This time, a security video did show MIDDLETON exiting a 2019 Hyundai Elantra with South Carolina license plates registered to Adrianne HILTON.

(18)

At the time of the Robbery, PLAINTIFF was in North Augusta, South Carolina at his grandmother's home where he was residing and was not involved in the robbery of MIDDLETON.

(19)

DEFENDANT Walter MCNEIL was assigned to investigate the case as lead investigator for RCSO.

(20)

MCNEIL showed HILTON's photo to MIDDLETON and asked if she was the white female driver MIDDLETON had met up with.

(21)

MIDDLETON identified HILTON as the white female driving the vehicle that picked him up and robbed him.

(22)

Facebook is an online social media and social networking service that routinely works with law enforcement and can provide a user's IP address and unique identifier information including, but not limited to, photos, social associations, date of birth, nicknames, and current and historical location information. MCNEIL, MORROW, and HAMMOND are familiar with Facebook, and its general operation and function.

(23)

HILTON's Facebook profile information was obtained and reviewed by DEFENDANTS.

(24)

DEFENDANT HAMMOND identified dated Facebook posts from Adrianne HILTON in which she references an individual named "'Maurice Rivera."

(25)

DEFENDANT MORROW located a Facebook profile for a "Pedro Kilo," the page owner of which he determined was the picture of the black male who

Tyler MIDDLETON had identified as the black male with the rifle.

(26)

U.S. Marshall Special Agent Timothy Keen provided DEFENDANT MCNEIL a dated incident report from South Carolina in which HILTON was present with PLAINTIFF during an encounter with law enforcement.

(27)

DEFENDANT MCNEIL, determined and concluded "Maurice Rivera is 'Kilo Pedro.'(sic)" in his "Investigative Report."

(28)

DEFENDANT MCNEIL swore out the arrest warrant for PLAINTIFF on July 21, 2020.

(29)

More specifically, MCNEIL's sworn warrant application states in material part:

> Inv. McNeil then showed Tyler Middleton a picture of a black male who was also on Adrianne Hilton's Facebook and Tyler [Middleton] stated that was the male who had the gun in the back seat.
>
> Inv. McNeil arrived back at CID and briefed Investigator Sean Morrow on the details on the case. Inv. Morrow was able to find a Facebook profile of a "Pedro Kilo" who matched the picture of the black male who Tyler Middleton identified as the black male with the gun. Inv. McNeil filled out a Facebook Preservation Form on "Pedro Kilo" as well.

Through further investigation and help thru (sic) RCSO intel and U.S. Marshall Deputy Timothy Keen, Inv. McNeil was able to find out the name of the black male suspect who was in the back seat of the vehicle with the AR.  The suspects (sic) name is Maurice C. Rivera.

(30)

The person identified by MIDDLETON and who is depicted in the Facebook profile for "Pedro Kilo" is Keenon Trayvon STALEY and not PLAINTIFF.

(31)

None of the DEFENDANTS had any prior knowledge of the PLAINTIFF and had never interacted with the PLAINTIFF.

(32)

This identification and affirmative statement by MCNEIL was a false statement was made knowingly and intentionally or made with reckless disregard for the truth. MCNEIL's identification of PLAINTIFF as the individual "Pedro Kilo" was a deliberate falsehood or made with reckless disregard for the truth in violation of Franks v. Delaware, 98 S.Ct. 2674 (1978).

(33)

DEFENDANTS did nothing to attempt to investigate PLAINTIFF's location at the time of the robbery, interview the PLAINTIFF, or otherwise connect the PLAINTIFF to the alleged robbery apart from the facts outlined above.

8

(34)

This wrongful and conclusory identification by DEFENDANTS of PLAINTIFF was the sole basis for arresting PLAINTIFF on August 3, 2020.

(35)

DEFENDANTS acted knowingly and intentionally or with reckless disregard for the truth, and the arrest warrant false statement was necessary to the finding of probable cause.

(36)

After the PLAINTIFF was arrested, DEFENDANTS and no one else with RCSO even attempted to interview the PLAINTIFF as he sat in the Richmond County Jail.

(37)

MCNEIL obtained a copy of "Pedro Kilo"'s profile from Facebook on or about October 15, 2020, after the PLAINTIFF had been in custody for over two months.

(38)

In the Facebook profile for "Pedro Kilo," STALEY listed his "registered email address" as keenostaley2000@gmail.com.

(39)

The "Pedro Kilo" Facebook profile obtained by MCNEIL was being

accessed from various locations throughout South Carolina during the period

PLAINTIFF was incarcerated in Richmond County, Georgia.

(40)

STALEY'S birthdate is the same as the "Pedro Kilo" Facebook profile page

user's date of birth listed as September 29, 2000.

(41)

While PLAINTIFF was incarcerated, STALEY used his "Pedro Kilo"

Facebook profile to search for "Maurice Rivera" and "Adrianne Hilton" on August

11, 2020, as reflected in the copy "Pedro Kilo"'s Facebook profile MCNEIL

possessed.

(42)

STALEY used his "Pedro Kilo" account to look for information about "the

Richmond Police Department" and news articles that included "news 12 adrian

hilton" during the time PLAINTIFF was incarcerated.

(43)

Upon information and belief, STALEY contacted RCSO and attempted to

exonerate PLAINTIFF but the phone call was not considered by the RCSO

employee who received it.

(44)

STALEY via messenger on the "Pedro Kilo" Facebook page provided an

email where he could be reached as "keenondadawg@gmail.com."

(45)

A contact of STALEY on the "Pedro Kilo" profile calls the user by the name

"Keenon" in a Facebook messenger message.

(46)

STALEY, as the "Pedro Kilo" Facebook profile page user, discusses the

incident for which PLAINTIFF was wrongfully arrested with another person over

Facebook messenger and states about PLAINTIFF "they got the wrong person"

and that "[Hilton's boyfriend] look (sic) like me or sum (sic)."

(47)

STALEY had a criminal history and was known to law enforcement in South

Carolina before this incident having previously been arrested on or about March

27, 2019, for discharging a firearm into a dwelling in North Charleston, South

Carolina.

(48)

"Pedro Kilo" Facebook page owner STALEY was "friends" with HILTON

on Facebook.

(49)

No exigency existed at the time the arrest warrant was taken out which would have prevented Defendants MCNEIL, MORROW, HAMMOND or anyone else associated with RCSO from undertaking a proper investigation.

(50)

MIDDLETON did not know the identity of the suspects who allegedly robbed him.

(51)

No show-up, photo array photographic identification nor lineup was utilized to determine if MIDDLETON would identify STALEY, PLAINTIFF or any other individual in this case.

(52)

Instead, MIDDLETON was shown a single photograph of STALEY and asked to confirm in essence: this-is-the-guy-who-did-it--right?

(53)

Neither DEFENDANT MCNEIL, MORROW, HAMMOND nor anyone with RCSO substantively reviewed the "Pedro Kilo" Facebook profile obtained by law enforcement to make a correct determination that STALEY was not

PLAINTIFF and thereby, as a matter of fact and law, possessed exculpatory evidence and ignored it.

(54)

More specifically, had DEFENDANT MCNEIL, MORROW, HAMMOND or anyone with RCSO reviewed the "Pedro Kilo" Facebook information they would have correctly concluded that the Facebook profile of a "Pedro Kilo", who matched the picture of the black male who MIDDLETON identified as the black male involved in the alleged robbery, was STALEY and not PLAINTIFF.

(55)

DEFENDANTS MCNEIL, MORROW, and HAMMOND wilfully, intentionally, deliberately or with reckless disregard for the truth falsified and omitted facts which were clearly critical to a finding of probable cause from the PLAINTIFF's warrant, including, but not limited to the prior lies MIDDLETON provided to them and RCSO about the facts and circumstances of his alleged robbery.

(56)

DEFENDANTS MCNEIL, MORROW, and HAMMOND failed to attempt to identify the known perpetrator through social media or other readily accessible alternative sources of information including show-up, photo array photographic

identification, or lineup. And failed to review the Facebook profile of "Pedro Kilo" after being obtained.

(57)

The Richmond County Magistrate issuing the arrest warrant for PLAINTIFF relied on MCNEIL's fabricated and false representation that PLAINTIFF had been positively identified by MIDDLETON, MCNEIL, MORROW, and HAMMOND in erroneously finding probable cause to issue an arrest warrant on or about August 3, 2020.

(58)

MCNEIL presented the case against PLAINTIFF to the Richmond County Grand Jury on or about January 27, 2021.

(59)

No physical evidence was recovered from the scene of the robbery by any of the DEFENDANTS or anyone acting on behalf of RCSO.

(60)

MCNEIL had access to exculpatory evidence in his investigative file with the "Pedro Kilo" Facebook profile when he presented the PLAINTIFF's case to the Richmond County Grand Jury and therefore this is not simply a case of mistaken identification in the prosecution and arrest.

(61)

MCNEIL did not attempt to withdraw or recall the warrants previously issued though he was in possession of exculpatory evidence that exonerated the PLAINTIFF before he proceeded with his testimony in front of the Richmond County Grand Jury.

(62)

In a custodial statement to MCNEIL, HILTON told MCNEIL that PLAINTIFF was not in the vehicle at the time she encountered MIDDLETON.

(63)

MCNEIL was presented with a Facebook account known to be associated with the actual perpetrator of the robbery and refused to review the information contained therein and readily available regarding the actual identified person who committed the robbery.  In so doing, MCNEIL created a very substantial likelihood of irreparable misidentification.

(64)

MCNEIL deliberately ignored proferred evidence of innocence, information that would give rise to serious doubt, and ignored relevant evidence and conducted his investigation and prosecution in a biased manner.

(65)

MCNEIL failed to provide the exculpatory Facebook "Pedro Kilo" profile to the District Attorney's Office.

(66)

PLAINTIFF was indicted on or about January 27, 2021, for Armed Robbery and Possession of a Firearm during the commission.

(67)

PLAINTIFF RIVERA remained in custody for nine (9) months before being released on bond before being rearrested for allegedly violating the terms of bond and was again released after Richmond County Superior Court Judge John Flythe determined the state did not establish any violation had occurred.

(68)

While on bond, PLAINTIFF was subject to being on an ankle monitor, subject to fees associated with the ankle monitor and prohibited from seeing his daughter.

(69)

While in custody, PLAINTIFF was stabbed by another inmate, removed from a shower naked by guards, and repeatedly, systemically, and brutally subjected to harassment and intimidation by other inmates and guards.

(70)

The Augusta Judicial Circuit District Attorney's Office *nolle prossed* the indicted criminal case against PLAINTIFF on September 12, 2023.

(71)

PLAINTIFF is not "Pedro Kilo" in the Facebook Profile, was not identified by MIDDLETON and was not involved with the alleged robbery.

## **COUNT ONE – Fourth Amendment False Arrest Claim**

(72)

The Fourth Amendment to the United States Constitution states as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

(73)

The warrant under which the PLAINTIFF was arrested was not supported by probable cause.

(74)

The acts and conduct of DEFENDANTS MCNEIL, MORROW, and HAMMOND deprived PLAINTIFF RIVERA of his rights, guarantees, and

privileges under the Fourth Amendment to the United States Constitution in that MCNEIL, MORROW, and HAMMOND's conduct as outlined above created false, misleading, and willfully omitted information in the arrest warrant application, thereby violating PLAINTIFF RIVERA's constitutional Fourth Amendment right to not be unreasonably seized and deprived of liberty as a result of the fabrication and willful omission of evidence by government actors.

(75)

PLAINTIFF was falsely arrested under a warrant that was falsely sworn by MCNEIL, who willfully and/or with reckless disregard for the truth made false statements and misleading statements to the Magistrate to manufacture probable cause for the arrest warrant, which would not have been issued but for said false and misleading statements.

(76)

In July 2020, it was clearly established law under the Fourth Amendment that:

(a) An officer cannot make false or misleading statements to obtain a warrant. Franks v. Delaware, 438 U.S. 154 (1978).

(b) An officer may not rely upon false statements by others in support of a warrant application where a reasonable officer would have known that

18

the facts stated in the affidavit do not constitute probable cause.  <u>Malley</u>

<u>v. Briggs</u>, 475 U.S. 335 (1986).

(c)  An officer cannot falsify facts to establish probable cause.  <u>Kingsland v.</u>

<u>City of Miami</u>, 382 F.3d 1220, 1232 (11th Cir. 2004).

(d)  A warrant is not valid if the affidavit supporting the warrant contains

deliberate falsity or reckless disregard for the truth.  <u>Franks</u>, *supra;* <u>Dahl</u>

<u>v. Holley</u>, 312 F.3d 1228, 1235 (11th Cir. 2002).

(e)  A warrant is not valid if the affidavit supporting it omits material facts

that would make the affidavit untrue if those facts were included.  <u>United</u>

<u>States v. Martin</u>, 615 F.2d 318, 328–29 (5th Cir. 1980).

(f) Officers cannot unreasonably and knowingly disregard or ignore

evidence or refuse to take an obvious investigative step that would

readily establish that they lack probable cause to arrest a suspect. <u>Cozzi v.</u>

<u>City of Birmingham</u>, 892 F.3d 1288 (11th Circuit 2018)

(77)

The foregoing principles of clearly established law, which apply to both

arrest warrants and search warrants under the Fourth Amendment, are rules of

which any reasonable officer would have been aware at the time of the events

giving rise to this lawsuit.

19

(78)

Because any reasonable officer would have known that the acts and omissions of DEFENDANTS MCNEIL, MORROW and HAMMOND alleged herein were in violation of clearly established law, MCNEIL, MORROW, and HAMMOND are not entitled to qualified immunity for falsely arresting PLAINTIFF RIVERA under the Fourth Amendment.

**COUNT TWO – Fourth Amendment Malicious Prosecution Claim**

(79)

By swearing out an arrest warrant and filing formal criminal charges against PLAINTIFF, DEFENDANT MCNEIL caused a criminal prosecution to be initiated against PLAINTIFF RIVERA.

(80)

In addition to initiating the prosecution, MCNEIL, MORROW, and HAMMOND continued to participate and assist in the continuation of the prosecution against PLAINTIFF over the next several months in which he was incarcerated which were foreseeable consequences of the unconstitutional acts and omissions of DEFENDANTS.

(81)

The facts and circumstances show that (i) DEFENDANTS MCNEIL,

MORROW, and HAMMOND fabricated evidence by deliberately falsifying or

acting with total reckless disregard for the truth, that the robber was PLAINTIFF;

(ii) MCNEIL fabricated evidence by preparing a probable cause affidavit, seeking

a warrant for the arrest of PLAINTIFF, where he falsely stated that PLAINTIFF

RIVERA was the same individual in the "Pedro Kilo"/STALEY Facebook profile;

(iii) MCNEIL fabricated and provided misleading evidence by presenting to

prosecutors and the magistrate court that PLAINTIFF was the same person in the

"Pedro Kilo"/STALEY Facebook profile; and (iv) DEFENDANTS MCNEIL,

MORROW, and HAMMOND deliberately ignored and failed to follow-up on

known exculpatory evidence, inconsistencies, and other leads that would have

exonerated PLAINTIFF RIVERA  and would have prevented him from being

falsely arrested and prosecuted.

(82)

DEFENDANTS MCNEIL, MORROW, and HAMMOND acted with malice,

with reckless disregard for the truth, and without regard for the rights of

PLAINTIFF when they caused, participated, and assisted with the prosecution of

PLAINTIFF and the continuation of that prosecution over the next several months

when they knew or should have known that there was no actual or arguable

probable cause to support the criminal charges that MCNEIL caused to be filed

against PLAINTIFF.

(83)

Said prosecution of PLAINTIFF with malice and without probable cause was ultimately terminated in favor of PLAINTIFF when the charges against him were *nolle prossed* by the motion of the Augusta Judicial Circuit District Attorney on or about September 11, 2023, and by Order of the preceding Superior Court Judge John Flythe.

(84)

Just as it was a violation of clearly established law for DEFENDANTS MCNEIL, MORROW, and HAMMOND to make false statements to obtain a warrant for PLAINTIFF RIVERA, it was also a violation of clearly established law for MCNEIL, MORROW, and HAMMOND to willfully overlook information that would exonerate PLAINTIFF that was in their possession and use the same false and misleading statements or omissions of fact to cause, participate in, and assist with the initiation and continuation of the prosecution of PLAINTIFF when they knew or should have known that such statements and omissions were false or misleading and that a reasonable officer would have known that there was no arguable probable cause to prosecute PLAINTIFF.

22

(85)

Because any reasonable police officer in the year 2020 would have known

that it was unconstitutional to falsify evidence, manufacture probable cause, and

disregard and ignore evidence either to support an arrest or a criminal prosecution,

DEFENDANTS are not entitled to qualified immunity for the malicious

prosecution of PLAINTIFF under the Fourth Amendment.

### COUNT THREE– Malicious Prosecution under State Law

(86)

DEFENDANTS (1) initiated prosecution against the PLAINTIFF; (2) did so

without probable cause; (3) did so with malice when they possessed information

that conclusively established the PLAINTIFF was not the individual involved in

the robbery; (4) did so under a valid arrest warrant issued based on false

information provided by MCNEIL, (5) the criminal proceeding terminated in favor

of the PLAINTIFF; and (6) caused the PLAINTIFF damages all in violation of the

laws of the State of Georgia, O.C.G.A. § 51-7-40 et. seq. and Federal law.

### COUNT FIVE- False Arrest and Imprisonment under State Law

(87)

DEFENDANTS, acting within the course and scope of their employment

with RCSO unlawfully and illegally detained and arrested, and caused to be

detained and arrested the PLAINTIFF and as such are liable under Georgia law, O.C.G.A. § 51-1-1 et. seq. and Federal law for his injury and resulting damages.

## COUNT EIGHT- Assault and Battery under State Law

(88)

DEFENDANTS, acting within the course and scope of their employment with RCSO caused apprehension of physical contact and unlawful touching of the PLAINTIFF which resulted in physical injury to the PLAINTIFF. This includes the physical arrest by law enforcement, the handcuffing and transportation to Richmond County, the compelled movement by RCSO officers, the physical placement in the RCSO jail, the forceful removal from the shower by RCSO officers, and the stabbing of the PLAINTIFF while in custody in violation of the laws of the State of Georgia, O.C.G.A. § 16-5-19 et. seq. and Federal law.

## DAMAGES

(89)

As a direct and proximate result of the aforementioned unconstitutional conduct of DEFENDANTS, PLAINTIFF was deprived of his liberty, confined for an extended period of time, forced to incur lost wages and other economic losses, and forced to endure severe stress and mental suffering for which he is entitled to

recover compensatory damages from all of the DEFENDANTS in an amount to be determined by a jury.

(90)

Because the unconstitutional acts of DEFENDANTS were committed willfully, in bad faith, or with reckless disregard for the rights of PLAINTIFF, and because DEFENDANTS had knowledge of, participated in, or were complicit with such conduct by DEFENDANTS MCNEIL, MORROW, and HAMMOND, PLAINTIFF also seeks to recover punitive damages from DEFENDANTS in an amount to be determined by a jury.

(91)

PLAINTIFF is also entitled to recover reasonable attorney's fees under 42 U.S.C. §1988.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF demands:

(a)  That DEFENDANTS answer this Amended Complaint within the time required by law;

(b)  The PLAINTIFF be awarded such damages as will fully compensate the PLAINTIFF for the DEFENDANTS' violations of Federal law, the laws of

the State of Georgia and the United States Constitution;

(c)   That PLAINTIFF be awarded attorneys' fees as authorized under 42 U.S.C.S. § 1988 for DEFENDANTS' violation of 42 U.S.C.S. § 1983 *et. seq.* and as otherwise authorized under federal and state law;

(d)   The aforementioned conduct of DEFENDANTS amounted to such conscious indifference and reckless disregard for the consequences as to also authorize the imposition of punitive damages against the DEFENDANTS under both federal and state law;

(e)   That PLAINTIFF be awarded such other, additional or general relief as the interests of justice may require; and

(f)   For a jury to hear and render judgment on those causes of action so triable.

**A JURY TRIAL IS DEMANDED.**

This 30th Day of December 2024

**/S/ Robert T. Homlar**
Robert T. Homlar
GA Bar Number: 364714
Attorney for PLAINTIFF RIVERA

Robert T. Homlar P.C.
580 James Brown Blvd.
Augusta, GA 30901
(706) 831-0859/ Telecopier (706) 432-1722
robert@homlarlaw.com